[No. 13554.   Department Two.   February 2, 1917.]

BRADY & SON, *Appellants*, v. BEN J. BELL *et al.*,

*Respondents.*[1]

SALES — CONDITIONAL SALES—LOGGING ENGINE—"RAILROAD EQUIP-
MENT"—STATUTES GOVERNING.   A conditional sale to a logger of a
small twenty-ton locomotive engine, known as a "dinkey" engine,
which was shipped on a flat car, and was to be used exclusively on
a short logging track, falls within Rem. Code, § 3670, providing that
all conditional sales of personal property shall be absolute as to
subsequent creditors, unless a memorandum of the sale is filed in
the auditor's office of the county where the vendee resides, and not
within Rem. Code, § 8741, providing that no contract for a con-
ditional sale of railroad equipment or rolling stock retaining title
in the vendor shall be valid against subsequent creditors unless evi-
denced by an instrument duly acknowledged and filed for record in
the office of the auditor of the county in which is situated the prin-
cipal office of the vendee; since the words "railroad equipment and
rolling stock" used in the latter section, apply only to such equip-
ment used by a railroad company acting as a common carrier.

Appeal from a judgment of the superior court for Clarke
county, Back, J., entered November 26, 1915, upon findings
in favor of the defendants, in an action to recover possession
of property levied upon under execution, tried to the court.
Affirmed.

*D. E. Hardin* (*R. Sleight*, of counsel), for appellants.

*R. C. Sugg*, for respondents.

MORRIS, J.—Appellants seek in this proceeding to estab-
lish an adverse claim to property levied upon under an exe-
cution in favor of Bell and against Dietderick & Studer.
The property in question is a small twenty-ton locomotive,
and was purchased by Dietderick & Studer from appellants
June 1, 1915, under a conditional sale contract, providing for
deferred payments and that title should remain in the ven-
dors until all payments were fully made.   Delivery was made
June 5th, and on June 21st the contract was received by

[1]Reported in 162 Pac. 865.

the county auditor, filed and indexed as a conditional sale contract.

The decisive question on this appeal is whether, as held by the lower court, the controlling statute is Rem. Code, § 3670, providing that all conditional sales of personal property shall be absolute as to subsequent creditors and others unless a memorandum of the sale is filed in the auditor's office of the county wherein the vendee resides within ten days after the taking of possession by the vendee, or Rem. Code, § 8741, providing that no contract for the conditional sale or lease of railroad equipment or rolling stock, retaining title in the vendor or lessor until payment is fully made, shall be valid against subsequent judgment creditors or purchasers for value without notice unless the same shall be evidenced by an instrument duly acknowledged and filed for record in the office of the auditor of the county in which is situated the principal office of the vendee or lessee. If § 3670 controls, the judgment is right. If § 8741 applies, the judgment is wrong.

The record further describes the engine as a small engine such as is used by loggers in their operations in getting out timber, too small and too light for general railroad use. It was billed to Dietderick & Studer as a "dinkey" engine, and shipped to them on a flat car. Dietderick & Studer were at the time engaged in logging, and as part of their operations had constructed a track three-quarters of a mile in length connecting the Northern Pacific Railway Company track with the timber in which they were operating. The engine was used exclusively on this track.

Section 8741 is part of the Territorial act of 1883 (Laws 1883, p. 62), entitled "An act relating to certain contracts for the conditional sale or lease of railroad equipment and rolling stock, and providing for the recording thereof." This act is plainly indicative of an intention to include only "railroad equipment and rolling stock," as such words are ordinarily used and understood. The word "railroad," when

used in a statute and not otherwise qualified, save for those variant decisions in which it is sought to determine whether or not street railways are included, is generally held to refer to those larger and permanent lines or systems which extend from town to town, or city to city, falling within the well known term of "common carriers," although in construing such phrases as "fellow servants," "assumption of risk" and other like terms relating to employees, cases can be found extending the rule to railroads engaged exclusively in logging operations. However this may be as applied to present day legislation, looking backward to the railroad situation as it existed in the Territory of Washington in 1883, it is almost conclusive that the legislative intent expressed in this act of 1883 was to enact legislation affecting railroads as that term was then understood, and embracing only steam or commercial railroads.

No cases construing a statute similar to § 8741 are cited in either brief, and an independent research has disclosed but one. *In re Ferguson Contracting Co.*, 183 Fed. 880, where, in determining the right of possession to certain locomotives as between the vendors in a conditional sale or lease and the receiver in bankruptcy, it was held that the words "railroad equipment and rolling stock," as found in the New York statute providing that such equipment when sold or leased under agreements that title should remain in the vendor or lessor until payment of the purchase price shall be invalid as to subsequent judgment creditors unless the contract was in writing, fully acknowledged and recorded in the office of the county clerk or register of the county in which was located the principal office or place of business of the vendee or lessee, were equivalent to the words "rolling stock used on a railroad," and applied only to railroads operating as common carriers. The New York statute contains a further provision similar to that found in § 8741, that each locomotive or car so sold shall have the name of the vendor or lessor plainly marked on each side. These two statutes are the

same. They were both enacted in the same year—1883. It is evident they were both enacted for the same purpose, to place railroad equipment and rolling stock in a different position than other chattels conditionally sold. In ascertaining that purpose, Judge Hand, district judge, who writes the opinion in the *Ferguson* case, finds two considerations · which seem adequate. First, because railway mortgages of rolling stock were at that time recorded as real estate mortgages, and second, because bondholders with after acquired property clauses could not protect themselves against secret vendors' liens upon new rolling stock necessarily substituted when the old stock wore out.

Whether or not these considerations, or either of them, induced the Territorial legislature to pass this act of 1883 is conjectural, although, as in New York, the second reason given by Judge Hand would apply with much force to conditions then existing in this new country. At all events, we believe the same construction should be applied to our statute as to the New York statute and accordingly hold that the words "railroad equipment and rolling stock" used in § 8741 apply only to such equipment in use by a common carrier or railroad company engaged in hauling passengers or freight for hire, and has no application to small locomotives used only in logging operations. This leaves the sale subject to the conditions of § 3670. There is no contention that its provisions were complied with.

The judgment is affirmed.

MOUNT, PARKER, HOLCOMB, and FULLERTON, JJ., concur.